
FILED
FEB 25 2025
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:25-CR-14-FL

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | DEFERRED PROSECUTION |
| ) | AGREEMENT |
| CAMPBELL SALES GROUP, INC. ) | |
| d/b/a LeatherItaliaUSA ) | |
| _____ ) | |

The defendant, Campbell Sales Group, Inc. d/b/a LeatherItaliaUSA (the "Company"), and the United States Attorney's Office for the Eastern District of North Carolina (the "Office") hereby enter into this Deferred Prosecution Agreement (the "Agreement").

Criminal Information and Acceptance of Responsibility

1. The Company acknowledges and agrees that the Office will file a Criminal Information (the "Information"), a copy of which is attached hereto as Attachment A and incorporated herein by reference, in the United States District Court for the Eastern District of North Carolina charging the Company with two counts of wire fraud, in violation of Title 18, United States Code, Section 1343. By executing the Agreement, the Company knowingly (a) waives any and all rights it has to have the crime charged in the Information presented to a grand jury and prosecuted by indictment, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b); (b) waives any and all objections with respect to venue and applicable statutes of limitations for any charges by the United States arising out of the conduct described in the Statement of Facts, a copy of which is attached hereto as Attachment B and incorporated herein by reference; and (c) consents to the filing of the Information, as provided by the terms of this Agreement, in the United States District Court for the Eastern District of North Carolina. The Office agrees to defer prosecution of the Company pursuant to the terms and conditions described below.

2. The Company admits, accepts, and acknowledges that (a) it is responsible under United States law for the acts of its officers, directors, employees, and agents with respect to the conduct described in the Information and the Statement of Facts, and (b) the facts described in the Statement of Facts are true and accurate. Should the Office pursue the prosecution that is deferred by this Agreement, the Company stipulates to the admissibility of the Statement of Facts

in any proceeding, including any trial, guilty plea, or sentencing proceeding, and will not contradict any facts in the Statement of Facts at any such proceeding.

## Term of the Agreement

3. The Agreement shall be in effect for a period beginning on the date on which the Information is filed and ending three (3) years from such date (the "Term"). The Company agrees that, in the event that the Office determines, in its sole discretion, that the Company has knowingly violated any provision of the Agreement or has knowingly failed to completely perform or fulfill each of the Company's obligations under the Agreement, an extension or extensions of the Term may be imposed by the Office, in its sole discretion, for up to a total additional time period of twelve (12) months, without prejudice to the Office's right to proceed with the prosecution as provided herein. Any extension of the Agreement extends all terms of the Agreement. Conversely, in the event the Office finds, in its sole discretion, that the provisions of the Agreement have been satisfied, the Office may elect to terminate the Agreement early. If the Court rejects the Agreement, all provisions of the Agreement shall be deemed null and void, and the Term shall be deemed not to have begun.

## Relevant Considerations

4. The Office enters into this Agreement based on the individual facts and circumstances presented by this case, including:

   (a) the Company did not voluntarily self-disclose the offense conduct to the Office or to any law enforcement agency, and as a result, the Company was not eligible for a more significant discount on the fine amount or the form of resolution;

   (b) the seriousness of the offense conduct;

   (c) the Company received credit, in addition to the two-point downward adjustment to the Sentencing Guidelines, in the form of a reduction from the bottom of the Sentencing Guidelines fine range, for its cooperation with the Office's investigation;

   (d) the Company has no prior criminal history; and

   (e) the Company has committed to continuing to cooperate with the Office as described below.

## Continuing Cooperation

5. The Company shall cooperate fully with the Office in any and all matters relating to the conduct described in this Agreement and the Statement of Facts, or any individual or entity referred to therein, as well as any other conduct that may violate federal criminal law, subject to applicable law and regulations, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term. At the request of the Office, the Company shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies, in any investigation of the Company or any of its present or former officers, directors, employees, agents and consultants, or any other party, in any and all matters relating to the conduct described in the Agreement and the Statement of Facts. The Company agrees that its cooperation pursuant to this paragraph shall include, but not be limited to, the following:

(a) cooperate fully with the Office and any other federal law enforcement agency designated by the Office regarding all matters related to the Office's investigation;

(b) retain all records relating to the Office's investigation for a period of ten (10) years from the end of the Term.

(c) assist the Office or any designated federal law enforcement agency in any investigation, prosecution, or civil proceeding arising out of or related to the Office's investigation by providing logistical and technical support for any meeting, interview, grand jury proceeding, or any trial or other court proceeding;

(d) use its best efforts to promptly secure the attendance and truthful statements or testimony of any current or former officer, director, employee, agent, or consultant of the Company at any meeting or interview or before any grand jury or at any trial or other court proceeding regarding matters arising out of or related to the Office's investigation;

(e) provide testimony of a competent witness as needed to enable the Office and any designated federal law enforcement agency to use the information and evidence obtained pursuant to the Company's cooperation with the Office before a grand jury or at any trial or other court proceeding regarding matters arising out of or related to the Office's investigation;

(f) provide the Office, upon request, consistent with applicable law and regulations, all information, documents, records, or other

3

tangible evidence not protected by a valid claim of privilege or work product regarding matters arising out of or related o the Office's investigation about which the Office or any designated federal law enforcement agency inquires.

6. Nothing in this Agreement shall require the Company to waive any protections of the attorney-client privilege, attorney work product doctrine, or any other applicable privilege unless the Company voluntarily chooses to waive any such privilege. Nothing in this Agreement shall require the Company to violate the law of any jurisdiction in which it operates.

## Payment of Monetary Penalties and Restitution

7. The Company agrees to pay a Criminal Fine in the amount of $1,000,000 to the United States Treasury. The Company further agrees to pay Restitution to the United States Small Business Administration in the amount of $499,164.50. The Company agrees to pay the combined Criminal Fine and Restitution amount of $1,499,164.50 ("Total Monetary Penalty") not later than ten (10) business days after approval of this Agreement by the United States District Court for the Eastern District of North Carolina.

8. The Total Monetary Penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Office that the Total Monetary Penalty is the maximum penalty that may be imposed in any future prosecution, and the Office is not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the Office agrees that under those circumstances, it will recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment.

9. The Company agrees that it will not file a claim or a petition for remission, restoration, or any other assertion of ownership of request for return relating to the payment of the Total Monetary Penalty, or an action or motion seeking to collaterally attack the seizure, restraint, forfeiture, or conveyance of the Total Monetary Penalty, nor shall it assist any others in filing any such claims, petitions, actions, or motions.

10. The Company shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source with regard to the penalty or disgorgement amounts that the Company pays pursuant to this Agreement or any other agreement concerning the conduct set forth in the Statement of Facts.

11. The Company acknowledges that no tax deduction or other offset may be sought in connection with the payment of any part of the Total Monetary Penalty.

4

## Conditional Release from Liability

12. Subject to Paragraphs 15 through 19 below, the Office agrees, except as provided in this Agreement, that it will not bring any criminal or civil case against the Company relating to any of the conduct described in either the Statement of Facts or the Information filed pursuant to this Agreement, or for conduct that the Company disclosed to the Office prior to the signing of this Agreement. This Agreement does not provide any protection against prosecution for any future conduct by the Company. In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Company. The Office, however, may use any information related to the conduct described in the Statement of Facts against the Company:

   (a)   in a prosecution for perjury or obstruction of justice;

   (b)   in a prosecution for making a false statement; or

   (c)   in a prosecution or other proceeding relating to any crime of violence.

## Deferred Prosecution

13. In consideration of the undertakings agreed to by the Company herein, the Office agrees that any prosecution of the Company for the conduct set forth in the Statement of Facts, and for the conduct that the Company disclosed to the Office prior to the signing of this Agreement, be and hereby is deferred for the Term. To the extent there is conduct disclosed by the Company that the parties have specifically discussed and agreed is not covered by this Agreement, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

14. The Office further agrees that if the Company fully complies with all of its obligations under this Agreement, the Office will not continue the criminal prosecution against the Company described in Paragraph 1 above and, at the conclusion of the Term, this Agreement shall expire. Within ninety (90) days of the Agreement's expiration, the Office shall seek dismissal with prejudice of the Information filed against the Company described in Paragraph 1 above and agrees not to file charges in the future against the Company based on the conduct described in this Agreement and the Statement of Facts.

## Breach of the Agreement

15. If, during the Term, the Company: (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete or misleading information, including in connection with its disclosure of

information about individual culpability; (c) fails to cooperate as set forth in Paragraph 5 of this Agreement; or (e) otherwise fails specifically to perform or to fulfill completely each of the Company's obligations under the Agreement, regardless of whether the Office becomes aware of such a breach after the Term is complete, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the Office has knowledge, including, but not limited to, the charge in the Information described in Paragraph 1 above and charges that arise from the conduct set forth in the Statement of Facts, which may be pursued by the Office in the United States District Court for the Eastern District of North Carolina or any other appropriate venue.

16. Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company shall be in the Office's sole discretion. Any such prosecution may be premised on information provided by the Company or its personnel. Any such prosecution relating to the conduct described in the Statement of Facts or relating to conduct known to the Office prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year. In addition, the Company agrees that the statute of limitations as to any violation of federal law that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Office is made aware of the violation or the duration of the Term plus five (5) years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

17. In the event the Office determines that the Company has breached this Agreement, the Office agrees to provide the Company with written notice prior to instituting any prosecution resulting from such breach. Within thirty (30) days of receipt of such notice, the Company shall have the opportunity to respond to the Office in writing to explain the nature and circumstances of the breach, as well as the actions the Company has taken to address and remediate the situation, which the Office shall consider in determining whether to pursue prosecution of the Company.

18. In the event that the Office determines that the Company has breached this Agreement: (a) all statements made by or on behalf of the Company to the Office or to the Court, including the facts in the Statement of Facts, and any testimony given by the Company before a grand jury, a court or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in

any and all criminal proceedings brought by the Office against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Company, will be imputed to the Company for the purpose of determining whether the Company has violated any provision of this Agreement shall be in the sole discretion of the Office.

19. The Company acknowledges that the Office has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company breaches this Agreement and this matter proceeds to judgment. The Company further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

### Sale, Merger, or Other Change in Corporate Form of Company

20. Except as may otherwise be agreed by the parties in connection with a particular transaction, the Company agrees that in the event that, during the Term, it undertakes any change in corporate form, including if it sells, merges or transfers business operations that are material to the Company's operations, or to the operations of any subsidiaries or affiliates involved in the conduct described in the Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer or other change in corporate form, it shall include in any contract for sale, merger, transfer or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The Company shall obtain approval from the Office at least thirty (30) days prior to undertaking any such sale, merger, transfer, or other change in corporate form, including dissolution, in order to give the Office an opportunity to determine if such change in corporate form would impact the terms or obligations of the Agreement.

### Limitations on Binding Effect of Agreement

21. This Agreement is binding on the Company and the Office but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Office will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company.

7

Case 7:25-cr-00014-FL     Document 1     Filed 02/25/25     Page 7 of 8

### Notice

22. Any notice to the Office under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Chief, Criminal Division, United States Attorney's Office, Eastern District of North Carolina, 150 Fayetteville Street, Suite 2100, Raleigh, North Carolina 27601. Any notice to the Company under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Sergio E. Acosta, Akerman LLP, 71 South Wacker Drive, 47th Floor, Chicago, Illinois 60606. Notice shall be effective upon actual receipt by the Office or the Company.

### Complete Agreement

23. This Agreement, including its attachments, sets forth all the terms of the agreement between the Company and the Office. No amendments, modifications, or additions to this Agreement shall be valid unless they are in writing and signed by the Office, the attorney(s) for the Company, and a duly authorized representative of the Company.

Date: 2-22-2025

Michael E. Campbell, CEO / for
Campbell Sales Group
d/b/a LeatherItaliaUSA

Date: 2-17-2025

Sergio E. Acosta
Counsel for Campbell Sales Group
d/b/a Leather Italia

On behalf of the United States Attorney's Office for the Eastern District of North Carolina, I accept this agreement.

Date: 2/25/25

DANIEL P. BUBAR
Acting United States Attorney

ADAM F. HULBIG
Assistant United States Attorney
Criminal Division