## ATTACHMENT A

## CRIMINAL INFORMATION

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. _____

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | CRIMINAL INFORMATION |
| | ) | |
| CAMPBELL SALES GROUP, INC. | ) | |
| d/b/a LeatherItaliaUSA | ) | |
| _____ | ) | |

The United States Attorney charges, at all relevant times, the following:

### Introduction

1. CAMPBELL SALES GROUP d/b/a LeatherItaliaUSA ("CAMPBELL SALES") was a leather furniture supplier headquartered in Leland, North Carolina, within the Eastern District of North Carolina.

2. The Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to small businesses and entrepreneurs, including loans through banks, credit unions, and other lenders.

3. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic, which was declared a nationwide disaster by the President on March 13, 2020. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job

retention and certain other expenses through a new SBA program referred to as the Paycheck Protection Program ("PPP").

4. In order to obtain a PPP loan, a qualifying business was required to submit a PPP application. The PPP application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP. In the PPP application, the applicant (through its authorized representative) was required to state, among other things: (a) its average monthly payroll expenses; and (b) its number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP program.

5. The applicant was required to certify that they were in operation as of February 15, 2020. The applicant was also required to certify that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant," and that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payment, lease payments, and utility payments; I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges." The applicant was also required to certify that the information in the application was true and correct.

6. A business's PPP application was received and processed, in the first instance, by a participating lender. If a PPP application was approved, the

2

participating lender funded the loan using its own monies, which was guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, the listed number of employees, and the gross income amount, was transmitted by the lender to the SBA in the course of processing the loan.

7. A PPP borrower could repay the loan or choose to seek forgiveness of the loan from the SBA by making certain representations and certifications. In order to obtain forgiveness of a PPP loan, the borrower was required to submit a PPP Loan Forgiveness Application (SBA Form 3508). In the forgiveness application, the borrower was required to certify the amount of the PPP loan proceeds that the borrower used for payroll and other authorized business expenses during the covered period after the loan was made. In order to obtain forgiveness of the entire PPP loan, the borrower was required to spend, and attest to spending, at least 60 percent of the loan proceeds on eligible payroll costs during the covered period. The forgiveness application required the borrower to certify, among other things, that all information provided in the application and supporting documents and forms was true and correct. The borrower was also required to confirm that they understood that providing a false statement to obtain forgiveness of an SBA-guaranteed loan was a federal crime, punishable by fine, imprisonment, or both.

## COUNTS ONE AND TWO

8. Paragraphs 1 through 7 are realleged and incorporated herein as though fully set forth in this charge.

9. Beginning no later than April 2020 and continuing through at least March 2022, both dates being approximate and inclusive, in the Eastern District of North Carolina and elsewhere, the defendant,

CAMPBELL SALES GROUP d/b/a LeatherItaliaUSA,

devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### Manner and Means

10. It was part of the scheme and artifice that CAMPBELL SALES, at all times acting by and through its authorized representatives, electronically submitted a PPP loan application to First Home Bank on or about April 3, 2020. In the application, CAMPBELL SALES certified that the loan funds would be used to, among other things, "retain workers and maintain payroll." CAMPBELL SALES affirmed that it would be required to provide to the lender "documentation verifying the number of full-time employees on payroll" and payroll costs. On or about April 27, 2020, PPP loan proceeds totaling $257,700 were disbursed to CAMPBELL SALES.

11. It was further a part of the scheme and artifice to defraud that, in order to qualify for complete forgiveness of the PPP loan based on the SBA's

eligibility criteria, CAMPBELL SALES added fake employees to the company's payroll during the covered period to create the illusion of higher payroll costs than what the company was actually incurring at the time. CAMPBELL SALES also fraudulently manipulated the wages of actual employees for the same purpose.

12. It was further a part of the scheme and artifice to defraud that on or about October 30, 2020, CAMPBELL SALES electronically submitted a PPP Loan Forgiveness Application (SBA Form 3508) to First Home Bank in which it reported its artificially inflated payroll costs during the covered period.

13. It was further part of the scheme and artifice to defraud that on or about January 5, 2021, CAMPBELL SALES emailed false and fraudulent payroll documentation to First Home Bank to support the company's loan forgiveness application, including a spreadsheet listing the "ghost" employees and their purported wage amounts. The full loan amount was subsequently forgiven by the SBA in May 2021.

14. It was a further part of the scheme and artifice to defraud that on or about March 19, 2021, CAMPBELL SALES applied to First Community Bank for an additional PPP loan and, in so doing, presented the same false 2020 wage information used to obtain forgiveness of the company's first PPP loan. On or about March 22, 2021, PPP loan proceeds totaling $213,006 were disbursed to CAMPBELL SALES. The full loan amount was subsequently forgiven by the SBA in March 2022.

## Use of the Wires

15. On or about each of the dates set forth below, in the Eastern District of North Carolina and elsewhere, the defendant, CAMPBELL SALES GROUP d/b/a LeatherItaliaUSA, for the purpose of executing the scheme described above, and attempting to do so, caused to be transmitted by means of wire communication in interstate commerce, the writings, signals, signs, pictures, and sounds described below for each count:

| COUNT | DATE | WIRE |
| --- | --- | --- |
| 1 | October 30, 2020 | PPP Loan Forgiveness Application submitted by the defendant within the Eastern District of North Carolina to First Home Bank, located outside of North Carolina |
| 2 | March 19, 2021 | PPP Application (Second Draw) submitted by the defendant within the Eastern District of North Carolina to First Community Bank, located outside of North Carolina |

Each entry in the foregoing table constituting a separate violation of Title 18, United States Code, Section 1343.

## FORFEITURE NOTICE

Notice is hereby given that all right, title, and interest in the property specified herein is subject to forfeiture.

Upon conviction of any violation of Title 18, United States Code, Section 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(3), any property, real or personal, which represents or is traceable to the gross receipts obtained, directly or indirectly, as a result of such violation.

Forfeiture Money Judgment

a) A sum of money representing the gross proceeds of the offenses charged herein against the defendant in the amount of at least $470,706.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

DANIEL P. BUBAR
Acting United States Attorney

_____
ADAM F. HULBIG
Assistant United States Attorney
Criminal Division

Date: 2/25/25

7