**ATTACHMENT B**

**STATEMENT OF FACTS**

The following Statement of Facts is incorporated by reference as part of the Deferred Prosecution Agreement (the "Agreement") between the United States Attorney's Office for the Eastern District of North Carolina (the "United States") and the defendant, Campbell Sales Group, Inc. d/b/a LeatherItaliaUSA ("Campbell Sales"). Certain of the facts herein are based on information obtained by the United States from third parties, through its investigation, and described to Campbell Sales. Campbell Sales admits, accepts, and acknowledges that it is responsible for the acts of its officers, directors, employees, and agents as set forth below. Should the United States pursue the prosecution that is deferred by this Agreement, Campbell Sales agrees that it neither contest the admissibility of, nor contradict, the facts in this Statement of Facts in any such proceeding. The following facts took place in or about and between April 2020 and March 2022, unless otherwise noted, and establish beyond a reasonable doubt the charges set forth in the Criminal Information attached to the Agreement.

## Entities

1. Campbell Sales, doing business as "LeatherItaliaUSA," was a leather furniture supplier headquartered in Leland, North Carolina, within the Eastern District of North Carolina.[1]

---

[1] As applicable, references to Campbell Sales herein includes, and is intended to include, one or more employees and/or representatives acting within the scope of their agency for the benefit of Campbell Sales.

2. The Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to small businesses and entrepreneurs, including loans through banks, credit unions, and other lenders.

### Paycheck Protection Program

3. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic, which was declared a nationwide disaster by the President on March 13, 2020. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses through a new SBA program referred to as the Paycheck Protection Program ("PPP").

16. In order to obtain a PPP loan, a qualifying business was required to submit a PPP application. The PPP application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP. In the PPP application, the applicant (through its authorized representative) was required to state, among other things: (a) its average monthly payroll expenses; and (b) its number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP program.

17. The applicant was required to certify that they were in operation as of February 15, 2020. The applicant was also required to certify that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant," and that "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payment, lease payments, and utility payments; I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges." The applicant was also required to certify that the information in the application was true and correct.

18. A business's PPP application was received and processed, in the first instance, by a participating lender. If a PPP application was approved, the participating lender funded the loan using its own monies, which was guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, the listed number of employees, and the gross income amount, was transmitted by the lender to the SBA in the course of processing the loan.

19. A PPP borrower could repay the loan or choose to seek forgiveness of the loan from the SBA by making certain representations and certifications. In order to obtain forgiveness of a PPP loan, the borrower was required to submit a PPP Loan Forgiveness Application (SBA Form 3508). In the forgiveness application, the borrower was required to certify the amount of the PPP loan proceeds that the borrower used for payroll and other authorized business

3

expenses during the covered period after the loan was made. In order to obtain forgiveness of the entire PPP loan, the borrower was required to spend, and attest to spending, at least 60 percent of the loan proceeds on eligible payroll costs during the covered period. The forgiveness application required the borrower to certify, among other things, that all information provided in the application and supporting documents and forms was true and correct. The borrower was also required to confirm that they understood that providing a false statement to obtain forgiveness of an SBA-guaranteed loan was a federal crime, punishable by fine, imprisonment, or both.

### Scheme to Defraud in Connection with First PPP Loan Application

20. On or about April 3, 2020, Campbell Sales submitted a PPP loan application to First Home Bank, an SBA-approved lender. Representatives from Campbell Sales signed the application and, in so doing, certified and acknowledged the following, among other things:

- "The [PPP] funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; I understand that if the funds are used for unauthorized purposes, the federal government may pursue criminal fraud charges."

- "Documentation verifying the number of full-time employees on payroll as well as dollar amounts of payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities for the eight-week period following this loan will be provided to the lender."

- "Loan forgiveness will be provided for the sum of documented payroll costs, covered mortgage interest payments, covered rent payments, and covered utilities…"

4

21. On or about April 27, 2020, PPP loan proceeds totaling $257,700 were disbursed and deposited into Campbell Sales's operating account. Immediately thereafter, Campbell Sales took steps to fraudulently increase its payroll in anticipation of attempting to meet the SBA's eligibility requirements to qualify for PPP loan forgiveness. Specifically, beginning with the May 8, 2020 pay period, and continuing through the June 19, 2020 pay period, Campbell Sales added multiple individuals to the payroll and made purported wage payments to them. None of these individuals worked for Campbell Sales during this time period, however, and the individuals did not retain the "ghost wages" paid to them. Rather, the funds were returned to Campbell Sales. The "ghost wages" represented a significant portion of the company's net payroll for the pay periods at issue.

22. In addition to the payment of "ghost wages," Campbell Sales artificially inflated its payroll during the covered period by increasing the biweekly wages of multiple actual employees. For example, one employee's biweekly wages were increased by $1,600. To offset the additional wages for this employee, Campbell Sales incorporated a bogus deduction, characterized as a loan repayment, into the employee's wage computation. Another employee's biweekly wages were increased by $1,730. After the wages were paid to the employee, the additional wage amounts were returned to Campbell Sales.

23. On or about, October 30, 2020, Campbell Sales submitted a PPP Loan Forgiveness Application (SBA Form 3508) to First Home Bank. To support its request for complete forgiveness of the PPP loan, Campbell Sales provided a total

5

payroll cost figure that included the false "ghost wages" paid to non-employees and the fraudulently inflated wages paid to employees, as described above. As part of the application, Campbell Sales certified, among other things, that the information in the application and all supporting documents was true and correct in all material respects. Campbell Sales also certified its understanding that "making a false statement to obtain forgiveness of an SBA-guaranteed loan" is punishable under federal law by imprisonment, fines, or both.

24. On or about December 29, 2020, a First Home Bank representative emailed Campbell Sales with a request for additional records and information related to the company's forgiveness application, including payroll documentation. On or about January 5, 2021, Campbell Sales emailed its response to First Home Bank. Among other things, Campbell Sales stated that "the covered period for the PPP loan was May 3, 2020 to June 27, 2020" and, in turn, recited the same false and fraudulent payroll total that appeared in the forgiveness application. Campbell Sales also attached an Excel spreadsheet titled "PPP Payroll Analysis". The analysis included a list of Campbell Sales's purported employees during the covered period, which included individuals who did not, in fact, work for the company. The analysis also reported the total wages allegedly paid to each listed person during the covered period, which included the "ghost wages" for the non-employees and the manipulated wages for actual employees, as described above.

25. On or about April 26, 2021, a First Home Bank representative emailed Campbell Sales and asked for "clarification of the # of employees at the time of the PPP application." Campbell Sales falsely replied that "during the PPP measurement period of May 3, 2020 to June 27, 2020, we had 15 employees. The Company did furlough some employees during the State mandated Covid shutdown in March/April 2020 but brought all but 2 back, and the 2 that did not return were because the employee decided not to return, not the Company's decision." In truth, according to the investigation, Campbell Sales had 11 actual employees during the covered (after excluding the non-employees paid "ghost wages"), and the company terminated eight employees in March/April 2020 and brought back only one.

26. The full balance of Campbell Sales's PPP loan was ultimately forgiven by the SBA in May 2021.

### Scheme to Defraud in Connection with Second PPP Loan Application

27. On or about March 19, 2021, Campbell Sales applied to First Community Bank for an additional PPP loan in the amount of $213,006. Campbell Sales certified, among other things, that the information in the application and all supporting documents was true and correct in all material respects. Campbell Sales also certified its understanding that "making a false statement to obtain forgiveness of an SBA-guaranteed loan" is punishable under federal law by imprisonment, fines, or both. On or about March 22, 2021, PPP loan proceeds totaling $213,006 were disbursed to the company.

7

28. To support the loan amount requested in the second PPP application, Campbell Sales reported average monthly payroll for the 2020 calendar year. The payroll figure provided to the lender incorporated the same false 2020 wage information that Campbell Sales used to obtain forgiveness of the first PPP loan, as described above.

29. On or about March 14, 2022, Campbell Sales submitted a PPP Loan Forgiveness Application (SBA Form 3508). The full balance of Campbell Sales's second PPP loan was subsequently forgiven by the SBA in March 2022.